UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SYLVESTER O. IHEANACHO, individually and d/b/a KTC Transportation Company, and KTC TRANSPORTATION COMPANY, INC., | Case No. 13-CV-0568 (PJS/JSM) |
| | ORDER |
| Plaintiffs, | |
| v. | |
| ABC BUS LEASING, INC., | |
| Defendant. | |

Darron C. Knutson, for plaintiffs.

Anthony J. Novak and Mark A. Solheim, LARSON KING, LLP, for defendant.

Plaintiff Sylvester Iheanacho owned and operated plaintiff KTC Transportation Company, a motor-touring company headquartered in North Carolina. Iheanacho leased three buses from defendant ABC Bus Leasing, Inc. ("ABC"). Eventually, the parties got into a dispute over whether Iheanacho was current on his lease payments. After Iheanacho refused to make any more payments, ABC repossessed and sold the buses. Iheanacho sued ABC for breach of contract, negligence, conversion, conducting a commercially unreasonable sale of the buses, and violating the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1.

This matter is before the Court on ABC's motion for summary judgment. ECF No. 51. Because the record makes clear that Iheanacho is not entitled to relief, the Court grants ABC's motion and dismisses all of Iheanacho's claims.

## I. BACKGROUND

Between 2000 and 2001, Iheanacho and ABC entered into three operating lease agreements, each of which related to a different bus. ECF No. 55-1 Exs. 1-3.[1] The agreements obligated Iheanacho to make monthly payments of between $5,295 and $5,475 per bus for 84 months; at the end of the lease term, Iheanacho had the option to buy the buses for between $120,000 and $135,000 per bus. *Id*. The agreements provided that, if Iheanacho fell behind on his payments on an earlier lease, ABC could apply payments that Iheanacho made on a later lease toward what was owed on the earlier lease. *Id*. Ex. 1 at 5, Ex. 2 at 5, Ex. 3 at 5. The agreements also provided that failure to make timely payments would "constitute an immediate default"—and that, on such a default, ABC had the right to repossess the buses. *Id*. Ex.1 at 4, Ex. 2 at 4, Ex. 3 at 4. The parties agreed that the lease agreements would be governed by Minnesota law. *Id*. Ex. 1 at 5, Ex. 2 at 5, Ex. 3 at 5.

---

[1] As best as the Court can tell, the three agreements are identical, save for the fact that they were executed at different times, applied to different buses, and established slightly different lease rates.

Iheanacho's timing was not good.  The tourism industry took a nosedive after the terrorist attacks of September 11, 2001, and Iheanacho had difficulty keeping up on his lease payments.  ECF No. 55-2 Ex. 5 at 60:16-63:16.  ABC and Iheanacho entered into a series of refinancing agreements that allowed Iheanacho to lower his monthly payments.  *Id.* Exs. 7-10.  Eventually, however, the parties began to dispute whether the payments made by Iheanacho had been properly applied.  Iheanacho alleged that not all of his payments had been correctly applied, and he repeatedly demanded that ABC provide a thorough accounting.  ABC responded that it had properly credited all of Iheanacho's payments, and ABC has suggested that Iheanacho's confusion was likely caused by the fact that it applied some payments that he made on newer leases to the amounts he owed on older leases.  ABC provided some documentation to Iheanacho, but he deemed that documentation to be insufficient.  ABC alleges that Iheanacho fell further and further behind on his payments, despite ABC's efforts to work with him.

Although the parties dispute whether and to what extent Iheanacho fell behind on his payments, they agree that Iheanacho stopped making payments altogether in November or December 2008.  Iheanacho alleges that he stopped making payments because he had "finished paying for the buses"—i.e., met all of his obligations under the three leases.  ECF No. 55-2 Ex. 5 at 102:14.  ABC says that Iheanacho was nowhere near

being done paying for the buses. After Iheanacho stopped making lease payments, ABC repossessed the buses and resold them for $160,000 each. ECF No. 54.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### B. Breach of Contract

Iheanacho claims that ABC breached the lease agreements in two ways:

First, Iheanacho argues that ABC breached the lease agreements by failing to provide the thorough accounting that he repeatedly demanded. But Iheanacho cannot point to anything in the lease agreements that obligated ABC to provide an accounting—thorough or otherwise. Obviously, then, ABC could not have violated the lease agreements by failing to provide a thorough accounting.

Second, Iheanacho argues that ABC breached the lease agreements when it repossessed the buses. It is undisputed that Iheanacho stopped making lease payments in late 2008, and it is also undisputed that, under the lease agreements, Iheanacho's failure to make timely payments would "constitute an immediate default" that would give ABC the right to repossess the buses. According to Iheanacho, however, he made all of the required payments, and thus ABC had no right to repossess the buses.

The problem for Iheanacho is that there is no evidence in the record supporting his claim that he made all of the payments that he was obligated to make under the lease agreements. Two things about this lawsuit must be emphasized: First, this is not a lawsuit brought by ABC to recover amounts due under the lease; this is a lawsuit brought by Iheanacho for, in essence, wrongful repossession of the buses. Thus, Iheanacho bears the burden of proving that he was *not* in default. Second, the evidence in this case is nightmarishly complicated because of the multiple leases, the many late and partial payments, the refinancing agreements, and ABC's byzantine accounting system. The parties seem to agree that expert testimony would be necessary for a jury to determine whether Iheanacho was in default. That is certainly the Court's opinion.

Unfortunately for Iheanacho, he has no expert testimony that he was not in default. Iheanacho did hire an accountant, and the accountant did submit a report. But the accountant merely opined that ABC had failed to properly credit certain payments

made by Iheanacho. (The accountant's opinion about which payments were not properly credited has been a moving target.) As Iheanacho's attorney conceded at oral argument, the accountant expressed no opinion about whether or when Iheanacho was in default or about whether Iheanacho had fully paid for the buses at the time that ABC repossessed them. To the contrary, the accountant found that Iheanacho made just over $1.5 million in payments to ABC. ECF No. 55-4 Ex. 31 at 4. But, by the terms of the original leases, Iheanacho would have had to make more than *$1.7 million* in lease and option payments if he wanted to own all three buses. ECF No. 55-1 Exs. 1-3.[2] This is admittedly a crude calculation—it ignores the refinance agreements, the late charges, and the like—but it underscores that there is a large gap between the testimony given by the accountant and the evidence that Iheanacho would need to meet his burden of proof. No reasonable jury could conclude, based on the evidence in the record, that Iheanacho had made all of the payments required under the lease agreements at the time that the buses were repossessed.

For these reasons, Iheanacho's breach-of-contract claim is dismissed.

---

[2] This amount is broken down as follows: $579,780 for the first bus ($5,295 per month for 84 months, plus $135,000 option price); $579,780 for the second bus ($5,295 per month for 84 months, plus $135,000 option price); and $579,900 for the third bus ($5,475 for 84 months, plus $120,000 option price).

### C. Remaining Claims

Iheanacho brings a number of other claims. Iheanacho's attorney (who did not draft the complaint, but inherited the case from a North Carolina law firm) conceded at oral argument that, if Iheanacho cannot recover on his contract claim, he cannot recover on any of his other claims. The Court has already held that Iheanacho cannot recover on his contract claim. But, for the sake of completeness, the Court will briefly address his other claims.

First, Iheanacho brings a claim for negligence. Minnesota law does not recognize a claim for negligence based on a breach of contract unless the breach is accompanied by violation of an independent duty. *See Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 584 (Minn. 2012); *Wild v. Rarig*, 234 N.W.2d 775, 789 (Minn. 1975). Iheanacho has not identified an independent duty that ABC violated. He has simply repleaded his (meritless) breach-of-contract claim as a negligence claim.

Second, Iheanacho brings a claim for breach of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1. But a simple breach of contract—that is, a breach of contract that does not involve egregious circumstances—does not constitute an unfair or deceptive trade practice for purposes of North Carolina law. *See Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 226 (N.C. 2013); *Mitchell v. Linville*,

557 S.E.2d 620, 623 (N.C. Ct. App. 2001).  Iheanacho cannot prove that ABC breached the lease agreements, much less that any such breach involved egregious circumstances.

Third, Iheanacho brings a claim for conversion.  This claim is entirely dependent on his claim that, under the lease agreements, ABC did not have the right to repossess the buses.  But the lease agreements gave ABC the right to repossess the buses if Iheanacho failed to make timely payments, and, as the Court has already held, Iheanacho cannot prove that he timely made all of the payments.

Finally, Iheanacho claims that ABC did not sell the buses in a commercially reasonable manner as required by Minn. Stat. § 336.9-610(b).  In support of this argument, Iheanacho offers nothing except his own opinion—supported by nothing in the record—that ABC should have been able to get more than $160,000 for each bus.  ABC has submitted evidence that it sold the buses in a commercially reasonable manner, and Iheanacho has "failed to meet [his] burden of showing specific evidence of unreasonableness . . . ."  *Karlstad State Bank v. Fritsche*, 374 N.W.2d 177, 182 (Minn. Ct. App. 1985).  Not only has Iheanacho not offered sufficient evidence that ABC could have obtained a greater amount for the buses, but, even if he had, "[t]he fact that a greater amount could have been obtained by a collection, enforcement, disposition, or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the

collection, enforcement, disposition, or acceptance was made in a commercially reasonable manner." Minn. Stat. § 336.9-627(a).

For these reasons, ABC's motion for summary judgment is granted.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion for summary judgment [ECF No. 51] is GRANTED.

2. All claims against the defendant are DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 12, 2015             s/Patrick J. Schiltz
                                     Patrick J. Schiltz
                                     United States District Judge